**Paul J. YOASH, Plaintiff–Appellant,**

v.

**McLEAN CONTRACTING COMPANY, INC., Defendant–Appellee.**

**Mark CASSON, Plaintiff–Appellant,**

v.

**McLEAN CONTRACTING COMPANY, INC., Defendant–Appellee.**

Nos. 89–2449, 89–2450.

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1990.

Decided July 13, 1990.

**1482**

Randolph Craig Baker (argued), Lentz, Hooper, Jacobs & Blevins, P.A., Baltimore, Md. (Joseph F. Lentz, Jr., Lentz, Hooper, Jacobs & Blevins, P.A., on the brief, Baltimore, Md.), for plaintiffs-appellants.

Thomas G. Young, III (argued), Baltimore, Md. (Andrew Martin Battista, Baltimore, Md., on the brief), for defendant-appellee.

Before ERVIN, Chief Judge, SPROUSE, Circuit Judge, and SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.

REBECCA BEACH SMITH, District Judge:

Paul J. Yoash ("Yoash") and Mark Casson ("Casson") brought separate suits in the district court of Maryland asserting claims under the Jones Act, 46 U.S.C.App. § 688(a), and under the maritime doctrine of unseaworthiness against their former employer, McLean Contracting Company ("McLean"). The district court granted summary judgment in favor of McLean in both cases because neither Yoash nor Casson qualified as a seaman under the test for seaman status applicable in this circuit. In this consolidated appeal, Yoash and Casson urge this court to adopt a broader definition of seaman status under the Jones Act. For the reasons stated below, we affirm the decisions of the district court.

**I.**

At the time of their respective injuries, Yoash and Casson were working as members of the pile driving crew on board the floating crane barge, CAPE FEAR. McLean was performing tests and engaged in pile driving for the construction of bridge piers for a new bridge over the Choptank River on the Eastern Shore of Maryland. Yoash began working for McLean as a pile driver on April 3, 1985. His employment history shows that he was engaged in construction work on bridges and industrial piers from 1972 until his injury on October 15, 1985. Yoash was first employed as a pile driver in 1976.

On board the CAPE FEAR, one of Yoash's jobs was to run the power pack which operates the ICE machine. An ICE machine is a vibrating hammer used to drive or extract pile or steel beams. Yoash performed a variety of other tasks on board the CAPE FEAR, which tasks included: cleaning out concrete pilings; escorting state inspectors who were there to insure that pilings were not cracked; manning the deck winches when the crane barge was being moved a short distance to drive another piling; making repairs to the deck winches and to the jet pumps used in the dredging operation for setting pilings; and marking off pilings for cutting. Yoash never did any cleaning or painting on the barge and he also never slept overnight on the barge. He was never certified by the United States Coast Guard for maritime work.

Since the CAPE FEAR has no motive power of its own, except for the deck engines which operate the anchor lines, it is pushed into place by a tugboat and then it is anchored. Because it can move the distance of its anchor lines, the CAPE FEAR is equipped with long steel beams, known as spuds, which are dropped to the river bottom to hold the barge in place during pile driving. Each spud has a cable that is long enough to reach the deck so that someone standing on the deck can raise and lower the spud. The spud cable is normally placed above the anchor line to avoid tugging the anchor line up when the spud cable is pulled. In this case, the spud cable was improperly placed underneath the anchor line. As Yoash was stepping over the anchor line, which is no higher than eighteen (18) inches off the deck, the spud line was pulled, causing the anchor line to jerk up underneath Yoash, who tripped and injured his leg. At the time of his injuries, Yoash was installing falsework pilings.

Casson began working for McLean on March 4, 1985. His work experience with respect to building docks and piers began in 1984, when he learned pile driving and worked off a crane barge. Shortly before his employment with McLean, Casson was employed as a carpenter doing building interior finishes, and he did some sheet metal work on the sides of prefabricated steel buildings which were set up on the Eastern Shore. During the course of his employment with McLean, Casson performed a variety of duties. Prior to his first injury on July 20, 1985, Casson was employed on a workboat which was used to push vessels to their destination. He was injured when he jumped from a barge being pushed by a workboat onto the deck of the CAPE FEAR. After recuperating from his injury, Casson was assigned to the CAPE FEAR where he was employed as a pile driver. Casson asserts that his duties included more than just pile driving. McLean concedes that approximately two to three times per week Casson would work on a workboat. On the CAPE FEAR, Casson maintained the jet (dredge) pumps used in pile driving and he alleges that he performed general maintenance duties on the vessel.

Casson was laid off from December 20, 1985, until February 24, 1986. Upon his return, Casson's duties were about the same as they had been before he was laid off, with the exception that he spent all of his time on the CAPE FEAR or the vessels alongside of the barge. Casson did not sleep overnight on the barge. Casson was injured on March 25, 1986, while performing pile driving work. He knelt down on a template to mark a grade, and as he knelt down, his knee popped.

In granting summary judgment for McLean, the district court relied solely on the case of *Stephenson v. McLean Contracting Co.*, 863 F.2d 340 (4th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 2110, 104 L.Ed.2d 671 (1989). It concluded that neither Yoash nor Casson had distinguished his case from *Stephenson*, and therefore the court was bound by that decision. This appeal by Yoash and Casson followed.

II.

Summary judgment is appropriate when there is no genuine issue of any material fact and it appears that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The material facts of a controversy are those identified by controlling substantive law as essential elements of claims and defenses. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A moving party is entitled to summary judgment if the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. In evaluating a case, a court must view the facts and inferences reasonably to be drawn therefrom in the light most favorable to the non-moving party. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) (citations omitted). Questions of law are reviewed *de novo* on appeal. *Higgins v. E.I.*

*DuPont de Nemours & Co.*, 863 F.2d 1162, 1166–67 (4th Cir.1988).

## III.

 The Jones Act, 46 U.S.C.App. § 688, provides in pertinent part: "Any *seaman* who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law...." (Emphasis added.) Only a worker who qualifies as a "seaman" may avail himself of the benefits provided by the Act. Because the Jones Act does not define the term "seaman" or provide criteria for eligibility, federal courts have developed definitions on a case by case basis. Through judicial interpretation, the term "seaman" has become equivalent in meaning to the phrase "member of the crew of a vessel plying in navigable waters." *Swanson v. Marra Brothers, Inc.*, 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L.Ed. 1045 (1946). The Supreme Court in *South Chicago Coal & Dock Co. v. Bassett*, 309 U.S. 251, 260, 60 S.Ct. 544, 549, 84 L.Ed. 732 (1940) (citations omitted), recognized that the word "crew" meant "employees on the vessel who are naturally and primarily on board to aid in her navigation." This court in *Whittington v. Sewer Constr. Co.*, 541 F.2d 427, 436 (4th Cir.1976), established a three-prong test for determining seaman status under the Jones Act: (1) the worker must be more or less permanently attached to a vessel or fleet; (2) he must be one whose duties serve naturally and primarily as an aid to navigation in the broadest sense;

and (3) the vessel must be in navigation. *Id.* at 436.[1]

In *Whittington*, the plaintiff alleged that he performed the work of a deckhand and a seaman and that he was a member of the crew aboard a barge being used in a bridge demolition project. The barge was moored in the river beneath a hole cut in the bridge. As the bridge was dismantled, the scrap was lowered onto the barge through the hole. The plaintiff sustained injuries when he fell from the bridge onto the barge, as he was being lowered through the hole by a cable. Applying the three criteria set forth above, this court concluded that Whittington did not qualify as a seaman, thereby affirming the dismissal of plaintiff's case for lack of admiralty jurisdiction. 541 F.2d at 436–37.[2]

In *Stephenson v. McLean Contracting Co.*, 863 F.2d 340 (4th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2110, 104 L.Ed.2d 671 (1989), this court had another opportunity to address the issue of seaman status under the Jones Act. In *Stephenson*, the plaintiff was an employee of McLean and was regularly assigned to work on the ANNAPOLIS, a crane barge which was being used as a work platform to construct the columns of a bridge. Stephenson was working in a cofferdam, when he slipped and fell to the bottom of it. The district court found that "the nature and purpose of [Stephenson's] activities were to construct a bridge." 863 F.2d at 341. The district court then applied the *Whittington* test and concluded that Stephenson's duties

---

1. In setting forth this three-prong test in *Whittington*, this court specifically noted that Congress, by enacting the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. §§ 901 *et seq.*), intended to limit Jones Act benefits to those persons who are members of a crew of a vessel plying in navigable waters. 541 F.2d at 436 (quoting *Swanson v. Marra Brothers, Inc.*, 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L.Ed. 1045 (1946)).

2. In *Whittington*, all three alternative criteria for establishing admiralty jurisdiction were examined, namely (1) whether the "injuries occurred upon navigable waters and had a maritime nexus," or (2) whether "the injuries were caused by a vessel in navigable waters or an appurtenance of the vessel," or (3) whether "the person injured was a seaman ... injured in the

course of his employment." 541 F.2d at 432 (citations omitted). The three-prong test for Jones Act seaman status was set forth by the court in *Whittington* when it examined the third criteria for admiralty jurisdiction, together with an examination of the distinction between the remedies available under the Jones Act and the warranty of seaworthiness. *Id.* at 433–36; *see infra* at 1487. As recognized in *Whittington*, the class of persons traditionally defined as "seamen" for admiralty jurisdictional purposes are the same as those afforded a remedy under the Jones Act, 541 F.2d at 435; whereas those afforded a remedy under the warranty of seaworthiness need only be performing the traditional work of a seaman, after having first established a basis for admiralty jurisdiction. *Id.* at 433; *see infra* at 1487.

did not serve naturally and primarily as an aid to navigation because they did not contribute directly or indirectly to the "transportation function" of the vessel. *Id.*[3] Consequently, the district court granted summary judgment in favor of McLean on the Jones Act claim. This court, agreeing that the second prong of the *Whittington* test had not been satisfied and that there were no genuine issues of material fact to go to the jury, affirmed the judgment of the district court. *Id.*

In *Stephenson,* the only matter at issue under the Jones Act was whether Stephenson's duties served naturally and primarily as an aid to navigation, the second prong of the *Whittington* test. *Stephenson,* 863 F.2d at 341. The district court in the cases at bar did not specify any basis for its decisions other than it felt bound by *Stephenson.* Therefore, it is inferred that the district court found that neither Yoash nor Casson could satisfy the second prong of the *Whittington* test, even viewing the facts in a light most favorable to each of them. Accordingly, we only address this issue on appellants' Jones Act claims.

On appeal, Yoash and Casson advance two arguments for reversing the district court's decisions. First, they assert that this court in *Stephenson* improperly injected a "transportation function" element into the second prong of the *Whittington* test, and, therefore, *Stephenson* should be re-examined. Second, they argue that their cases, in any event, are factually distinguishable from *Stephenson.* We do not agree with either of these contentions.

### IV.

■ The second prong of the *Whittington* test does require that a worker's duties serve naturally and primarily as an aid to navigation in order for a worker to be considered a seaman. *Whittington,* 541 F.2d at 436. The courts of appeals differ with respect to the emphasis and weight given to this prong of the test for seaman status. The Seventh and Third Circuits require a worker to have performed significant navigational functions in order to be considered a seaman. The Court of Appeals for the Seventh Circuit has stated:

> Because a Jones Act "seaman" is one who is a member of a *crew of a vessel,* and because a "vessel" under the Jones Act, while interpreted liberally, has been consistently defined as a floating structure that must have as one of its functions the *transportation* of personnel or materials across navigable waters, we believe it is the employee's relation to the transportation function of the vessel, *i.e.,* whether the employee contributes to the maintenance, operation, or navigation of the vessel as a means of transport on water, that is critical for Jones Act purposes. Such an interpretation fulfills what we believe to be the central purpose of the Act: to provide protection for those subjected to risks associated with the transportation function of vessels on navigable waters.

*Johnson v. John F. Beasley Constr. Co.,* 742 F.2d 1054, 1061–62 (7th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985) (citations omitted) (emphasis in original). This view is consistent with the approach taken by the Third Circuit. *See Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *Simko v. C & C Marine Maintenance Co.,* 594 F.2d 960 (3d Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979). In contrast, the Fifth Circuit in *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959), and in *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067 (5th Cir.1986), has taken the position that the aid to navigation requirement must be interpreted quite broadly in light of the Supreme Court's early Jones Act decisions. It interprets the aid to navigation element

---

**3.** Specifically, the district court held that Stephenson's "duties, considered in the aggregate, did not primarily serve as an aid to navigation and that he was not primarily engaged in moving the ANNAPOLIS or *otherwise contributing to the transportation function of the vessel.*" 863 F.2d at 341 (emphasis added). The district court further found that Stephenson was not even "indirectly contributing to the vessel's navigational functions by providing support services to those who were performing them." *Id.*

as being satisfied if an employee participates in any function a vessel may be designed to serve, not just exclusively the transportation function. *Barrett,* 781 F.2d at 1073.

A review of the foregoing authorities and this court's decisions in *Whittington* and *Stephenson* lead to the conclusion that *Stephenson* did not improperly narrow the second prong of the *Whittington* test by injecting a "transportation function" into the inquiry. In *Whittington,* the court did include the language "in the broadest sense" with the "aid to navigation" consideration, citing a 1966 Second Circuit case, *Harney v. William M. Moore Building Corp.,* 359 F.2d 649, 654 (2d Cir.1966).[4] No specific interpretation or refinement of this language was offered in *Whittington.* The court in *Stephenson* then refined and focused the second prong of the test to include consideration of a direct or indirect relation to the transportation function of the vessel in determining whether the worker's duties primarily served as an aid to navigation. The second prong of the test for determining seaman status under the Jones Act, after *Whittington* and *Stephenson,* is whether a worker's duties, when considered in the aggregate, serve naturally and primarily as an aid to navigation. In making the "aid to navigation" determination, a consideration of whether the duties primarily contribute, either directly or indirectly, to the transportation function of the vessel is appropriate.

■ We also disagree with appellants' second contention that their cases are factually distinguishable from *Stephenson.* First, appellants point to the fact that Stephenson was not injured on a vessel or on an appurtenance to a vessel, but instead was injured in a cofferdam. In the instant cases, however, Yoash was injured on the deck of the CAPE FEAR, and Casson was injured on a template beam which may constitute an appurtenance to the vessel.[5] Nevertheless, the situs of a worker's injuries has no determinative value for purposes of evaluating seaman status under the Jones Act. *See O'Donnell v. Great Lakes Co.,* 318 U.S. 36, 39, 42–43, 63 S.Ct. 488, 490, 491–492, 87 L.Ed. 596 (1943).[6]

■ Next, appellants claim that their duties, when considered as a whole, establish that they served as an aid to navigation in the broadest sense. They do not contend that their duties primarily contributed to the transportation function of the vessel. It is clear that Yoash and Casson were pile drivers whose primary purpose was to aid in the building of a bridge, not in the navigation of the vessel.[7] Their duties, when considered in the aggregate, were not to "serve naturally and primarily as an aid to navigation." *Stephenson,* 863 F.2d at 341; *Whittington,* 541 F.2d at 436. Those activities which did relate to the

---

4. However, the court in *Harney* specifically stated: "But we need not decide whether tasks performed aboard ship in furtherance of the vessel's special mission [*i.e.,* bridge building, dredging operation, etc.], but not of the vessel itself, are evidence of crewman status." 359 F.2d at 655–56. Rather, the court determined that Harney had numerous nautical tasks apart from the vessel's special mission to thereby permit an inference of seaman status to merit a jury's consideration. *Id.* at 656.

5. McLean argues in its brief that the template beam is not an appurtenance of the CAPE FEAR. Brief of Appellee at 25. Since the situs of appellants' injuries is not pertinent to seaman status under the Jones Act, determination of this point is not necessary.

6. Moreover, in *Whittington,* the plaintiff was injured when he fell onto a barge. 541 F.2d at 430. In *Johnson,* plaintiff was injured on a

floating barge. 742 F.2d at 1056. And, in *Barrett,* the plaintiff was injured while transferring from a crewboat to a barge and then suffered a second injury the next day while working on the barge. 781 F.2d at 1069. In each case, the respective plaintiffs were found not to be Jones Act seamen. The court in *Barrett* focused on plaintiff's length of service on the vessel to determine whether he performed a substantial amount of his work aboard it. *Id.* at 1074–76. In *Whittington* and *Johnson,* the courts directed their attention to the plaintiffs' duties considered in the aggregate. *Whittington,* 541 F.2d at 434–46; *Johnson,* 742 F.2d at 1064.

7. Of particular interest is the grievance Casson filed after his second injury on March 25, 1986, on the ground that he was not being paid as a pile driver. A pile driver's hourly wage was considerably higher than what Casson was earning. Casson won this wage claim. Joint App. at 348, 419.

transportation function of the CAPE FEAR were offshoots of the pile driving work. There was no genuine issue of material fact to be determined on these points. Therefore, the district court correctly granted summary judgment for McLean on the Jones Act claims because neither Yoash nor Casson qualifies as a seaman under the second prong of the *Whittington* test as refined in *Stephenson.*

### V.

The warranty of seaworthiness imposes a nondelegable duty on a vessel owner or operator to insure that the vessel is fit for voyage. *See Mahnich v. Southern S.S. Co.,* 321 U.S. 96, 99, 64 S.Ct. 455, 457, 88 L.Ed. 561 (1944) ("the admiralty rule that the vessel and owner are liable to indemnify a seaman for injury caused by unseaworthiness of the vessel . . . has been the settled law since this Court's ruling to that effect in *The Osceola,*" 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903)). A cause of action for unseaworthiness is separate and distinct from a Jones Act claim. *Gosnell v. Sea–Land Service, Inc.,* 782 F.2d 464, 467 (4th Cir.1986) (citing *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 498, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 *reh'g denied,* 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971)). A claim for unseaworthiness requires a maritime worker to show that he was doing the traditional work of a seaman at the time he was injured. *Stephenson,* 863 F.2d at 341–42; *Whittington,* 541 F.2d at 434. Neither Yoash nor Casson was performing the job of a seaman at the time of the injuries in question. They were both injured while performing their jobs as pile drivers; Yoash was installing falsework pilings when he was injured, and Casson was on a template marking a grade for the piles. They have no viable claims under the warranty of seaworthiness.

### VI.

Based on the foregoing reasons, we conclude that the district court did not err in granting McLean's motion for summary judgment on Yoash's and Casson's claims under both the Jones Act and the warranty of seaworthiness. Accordingly, the decision below is

AFFIRMED.