Doris MINNICK, Administratrix of the Estate of Richard Leon Minnick, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 90–1491–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 11, 1990.

Andrew M. Sacks and Michael F. Imprevento, Sacks & Sacks, Norfolk, Va., for plaintiff.

J. Phillip Krajewski, U.S. Attys. Office, Norfolk, Va., Peter F. Frost, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., for defendant.

ORDER

CLARKE, District Judge.

This matter comes before the Court on the motion of the defendant, the United

States of America, for partial summary judgment on two issues. The government asks the Court to enter summary judgment regarding (1) the plaintiff's decedent's status as a seaman under the Jones Act, 46 U.S.C.App. § 688, and (2) the applicability of the Virginia Wrongful Death Act, Va. Code Ann. §§ 8.01–50 to 8.01–56 (1984) to this action.

### Facts

Plaintiff's decedent, Richard Leon Minnick, worked for a company that performed cleaning services for the U.S. Navy in Norfolk, Virginia. The company contracted with the Navy to clean out a cofferdam, an enclosure surrounding a large gasoline tank, aboard the USS *Ponce*. Minnick's job was to enter the cofferdam wearing a breathing apparatus that was supplied with air by an electric compressor outside the cofferdam, and wash down the cofferdam so that waste gasoline and contaminants could be pumped out. Minnick died when the electricity supply to the compressor was turned off and he was overcome by the fumes in the cofferdam.

The plaintiff, as administratrix of her husband's estate, has brought this action against the United States pursuant to the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–52, and the Public Vessels Act, 46 U.S.C.App. §§ 781–90. Through these two statutes, the United States has consented to suit in situations in which a plaintiff could bring an admiralty suit against a privately owned vessel and its owner standing in the United States' position. The plaintiff's complaint consists of three counts. The first count charges that the United States was negligent when, through its officers and agents, it allowed the electricity that supplied Minnick with air to be cut off. The second count alleges that Minnick was a seaman, and that the United States breached the duty it owed him to provide a seaworthy vessel under the Jones Act. The third count of the complaint demands damages from the United States pursuant to the Virginia Wrongful Death

Act, Va.Code Ann. §§ 8.01–52 (1984). The plaintiff asks for damages including loss of society, loss of future earnings and support, medical expenses incurred by her decedent, funeral expenses, and the costs of pursuing this action.

### Seaman Status

■ The government has made a motion for partial summary judgment on two issues. First, the government states that as a matter of law, the plaintiff's decedent was not a seaman, and therefore the plaintiff may not pursue a Jones Act claim against the United States. The Fourth Circuit Court of Appeals has recently affirmed a district court's summary judgment decision based on the law controlling "seaman" status under the Jones Act. *Yoash v. McLean Contracting Co.*, 907 F.2d 1481 (4th Cir.1990). The court restated the test it had announced in *Whittington v. Sewer Constr. Co.*, 541 F.2d 427, 436 (4th Cir. 1976). According to *Yoash* and *Whittington*, the test for seaman status under the Jones Act has three prongs; (1) the worker must be more or less permanently attached to a vessel or fleet; (2) he must be one whose duties serve naturally and primarily as an aid to navigation in the broadest sense; and (3) the vessel must be in navigation. *Id.* at 436; *Yoash*, 907 F.2d at 1484.

■ In order to have been a seaman under the act, Minnick would have to have met each prong of the *Whittington* test. Reviewing the facts in the light most favorable to the plaintiff, as we must in determining the defendant's summary judgment motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985), plaintiff's decedent did not meet the second prong of the *Whittington* test, and therefore was not a seaman under the Jones Act.[1] *Yoash* defined the second prong of the *Whittington* test as whether the worker's duties, considered in the aggregate, served naturally and primarily as an aid to navigation. *Yoash*, 907 F.2d at 1486. The court in *Yoash* further held that in making the "aid to navigation" determination, dis-

---

1. Because the Court holds that Minnick did not meet the second prong of the *Whittington* test, it does not express an opinion as to whether Minnick met either of the other two prongs of the test.

trict courts should consider whether the worker's duties "primarily contribute, either directly or indirectly, to the transportation function of the vessel." *Id.*

Summary judgment on an issue is appropriate when there is no genuine issue of material fact between the parties, and it appears from the pleadings and any supporting affidavits that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Considering both plaintiff's complaint and the affidavit filed by her attorney in opposition to the government's motion for summary judgment,[2] and evaluating those documents in the light most favorable to the plaintiff, the Court holds that Minnick's duties did not serve as an "aid to navigation" as the law in this circuit has defined that term. Although the complaint states the legal conclusions that Minnick was a seaman, and that his duties were in aid of navigation, it does not allege any facts that would, if proved, support its assertions. Nor do any inferences from the facts alleged in the complaint support the assertions. Minnick's duties were to carry out the contract of his employer in cleaning and venting various tanks and cofferdams aboard the *Ponce.* These duties did not contribute to the transportation function of the ship, and were not an "aid to navigation." Minnick was therefore not a seaman. Consequently, his administratrix may not pursue a wrongful death claim under the Jones Act.

Virginia Wrongful Death Statute

The government also seeks summary judgment on the issue of whether the plaintiff may pursue a claim under Virginia's wrongful death statute in this action. The third count of plaintiff's complaint seeks damages pursuant to the Virginia Death by Wrongful Act statute. Va.Code Ann. § 8.01–52 (1984). The government asks the Court to enter summary judgment to the effect that plaintiff's only cause of action is a general maritime wrongful death cause of action as created by the United States Supreme Court in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The government argues that the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–50, codified the *Moragne* cause of action with respect to longshoremen and harbor workers, and that because this statute provides a federal cause of action for such workers, a parallel state cause of action is precluded.

Although the plaintiff asks for damages pursuant to the Virginia statute in her complaint, she seems to retreat from that position in her memorandum opposing the government's motion for partial summary judgment. She states in this memorandum that her cause of action is "admittedly" under *Moragne*'s general maritime wrongful death action, not the Virginia statute. She nonetheless argues that the Court should look to the state statute in determining the contours of her federal maritime remedy. The government's response to this line of reasoning is to argue that it may have been appropriate for courts to consider state wrongful death statutes in the early years of the *Moragne* cause of action, when the contours of the remedy were not yet clear, but that now, twenty years after the decision in *Moragne,* federal case law has so clarified the nature of the federal maritime remedy that reference to state wrongful death law is inappropriate.

▪ Both plaintiff and the government assume in their pleadings that the plaintiff may pursue a *Moragne* cause of action against the United States for the death of her husband. Having reviewed *Moragne* and subsequent Supreme Court cases con-

---

**2.** At oral argument on the government's motion for partial summary judgment, and in his brief in opposition to the government's motion, plaintiff's counsel argued that the motion as it related to the decedent's seaman status was not ripe for determination "until such time as meaningful discovery can be taken." Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment at 3. The Court took the motion under advisement after oral argument on November 26, 1990, giving counsel an additional week to file affidavits that would support a finding of seaman status for his client's decedent. Plaintiff's counsel has not filed any further support for his opposition to the government's motion. More than a week having passed since oral argument, the Court finds the motion ripe for determination.

struing *Moragne,* the Court interprets the law differently. The plaintiff may pursue a negligence action against the United States as owner of the vessel upon which her husband died, an action created by the LHWCA. 33 U.S.C. § 905(b). She may not, however, pursue a *Moragne* general maritime wrongful death cause of action. *Moragne* created a general maritime wrongful death cause of action for unseaworthiness. *Moragne,* 398 U.S. at 401–03, 90 S.Ct. at 1788–89.[3] In an action for injury or death predicated upon unseaworthiness, a plaintiff prevails if he or she establishes that the vessel was unseaworthy, and need not establish negligence on the part of the shipowner. *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 94, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946) ("the shipowner's liability for unseaworthiness ... is essentially a species of liability without fault"). The 1972 amendments to the LHWCA disallowed any recovery against a shipowner for unseaworthiness, and thereby limited the cause of action for harbor workers suing non-employer shipowners to an action sounding in negligence. 33 U.S.C. § 905(b); *Director, OWCP v. Perini North River Associates,* 459 U.S. 297, 313, 103 S.Ct. 634, 645, 74 L.Ed.2d 465 (1983). The amendments thereby foreclosed a *Moragne* general maritime wrongful death action by the survivors of a longshoreman or harbor worker.[4]

 The plaintiff's cause of action is therefore a negligence cause of action pursuant to § 5(b) of the LHWCA. The remaining issue before the Court on the government's summary judgment motion is what effect this federal statutory remedy has upon the applicability of Virginia's wrongful death statute. The LHWCA makes it clear that the plaintiff does not have a state law remedy when the LHWCA applies. Section 905(b), which gives a harbor worker the right to bring an action against a vessel and its owner, so long as the owner is not also the harbor worker's employer, states: "The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." 33 U.S.C. § 905(b). The import of this provision is clearly that the survivor of a harbor worker may not pursue a state wrongful death cause of action against a shipowner. Where a federal statute applies, as the LHWCA does in this case, and by its terms prohibits the application of state law, the supremacy clause requires the federal statute to prevail. U.S. Const. art. VI, cl. 2; *Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1042 (5th Cir.1983) (exclusivity provisions of the LHWCA preclude state law negligence claim).

According to the above reasoning, the government's motion for partial summary judgment is GRANTED. The second count of plaintiff's complaint, sounding in unseaworthiness under the Jones Act, and the third count of her complaint, brought under the Virginia Death by Wrongful Act stat-

**3.** The Supreme Court decided *Moragne* expressly to address the inconsistency then existing in federal maritime law, that the Death on the High Seas Act (DOHSA), 46 U.S.C.App. § 761, et seq., allowed a wrongful death action for unseaworthiness causing deaths at sea, but because the DOHSA did not extend to territorial waters, no unseaworthiness action existed for seamen who died within territorial waters, unless a state statute provided for such an action. *Moragne,* 398 U.S. at 395, 90 S.Ct. at 1785. When Congress passed the DOHSA in 1920, it permitted actions sounding in negligence and in unseaworthiness. The unseaworthiness cause of action did not take on any particular significance until the Supreme Court's "transformation of the shipowner's duty to provide a seaworthy ship into an absolute duty not satisfied by due diligence." *Id.* at 399, 90 S.Ct. at 1787. This transformation created a discrepancy between

the remedies for deaths on the high seas and for deaths that occurred within territorial waters. *Moragne* addressed the discrepancy by creating a general maritime wrongful death action for unseaworthiness that extended to territorial waters.

**4.** The Supreme Court has stated as much in a recent opinion. The issue in *Moragne* was whether a longshoreman's widow could pursue a wrongful death action predicated upon unseaworthiness, *Moragne,* 398 U.S. at 376–77, 90 S.Ct. at 1775, and the Court held that she could. *Id.* at 407–09, 90 S.Ct. at 1791–92. In *Miles v. Apex Marine Corp.,* —— U.S. ——, 111 S.Ct. 317, 112 L.Ed.2d 275 (U.S. November 6, 1990), the Court stated that "[i]f Moragne's widow brought her action today, it would be foreclosed by [the LHWCA]." *Id.* at ——, 111 S.Ct. at 323.

ute, are DISMISSED pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Under Rule 15(a) of the Federal Rules of Civil Procedure, the plaintiff is granted leave to amend her complaint in accordance with the Court's holding that her cause of action is one for negligence under § 5(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50.

IT IS SO ORDERED.