OPINION OF THE COURT
Smith, J.
The central issue here is whether Federal maritime law preempts New York Labor Law §§ 200, 240 (1) and § 241 (6).
Plaintiff Willie Gammon, a foreman dock builder, was injured while repairing a wood fender system[1] at the South Bronx Marine Transfer Station, also known as the Hunts Point Sanitation Department Transfer Station. New York City owns and operates the Marine Transfer Station and contracted with defendant Anjac Enterprises, Inc. to repair structures at the facility. Anjac subcontracted the pier repair to third-party defendant Macro Enterprises, Ltd., plaintiffs employer. Macro agreed “to perform all work * * * strictly in conformance and compliance with all laws, rules, regulations, ordinances and statutes in force in the locality in which the work is located.”
*586 In order to repair the pier, plaintiff often worked from a float stage in navigable waters that was secured to the land-based transfer station. At the time of the accident, plaintiff was cutting timber from the bulkhead. While cutting, he had to reach above his head. Using a chain saw, he would cut a portion of the timber, attach the timber with a chain to a boom from a crane and then cut the remaining portion of the timber. The crane would then lift the timber and place it on a barge. Plaintiff had just cut a portion of the timber and attached the timber to the boom. He had not cut the remaining portion. A passing tugboat created turbulence that moved the crane bar and float stage. The timber, 12 inches by 12 inches by 12 feet and weighing 200 pounds, came loose from the bulkhead. While still attached to the boom, the timber swung about wildly, striking plaintiff first on the top of the head and then striking other parts of his body. As a construction worker “engaged in maritime employment” (33 USC § 902 [3]), plaintiff qualified and received compensation and medical benefits under the Longshore and Harbor Workers’ Compensation Act (“LHWCA”) (33 USC § 901 et seq.).
Plaintiff commenced this action in Supreme Court, alleging violations of State Labor Law §§ 200, 240 (1) and § 241 (6) against the City of New York and the general contractor, Anjac. Specifically, paragraph 16 of the complaint alleges:
“The injury to plaintiff was caused by the negligence of the defendant and by its breach of the various provisions of Labor Law §§ 200, 240 and 241 and other federal, state and local statutes, ordinances and regulations.”
Anjac asserted a third-party complaint against plaintiff’s employer Macro, seeking contribution and indemnification.
The City and Anjac moved for summary judgment dismissing the complaint upon the ground that Federal maritime law preempts New York Labor Law. In the alternative, defendants moved for summary judgment on their contractual and common-law indemnification claims against third-party defendant Macro. Plaintiff cross-moved for partial summary judgment on liability on his Labor Law § 240 (1) and § 241 (6) claims. Supreme Court granted defendants’ motion for summary judgment to the extent of dismissing the complaint and denied plaintiff’s cross motion.
The Appellate Division reversed and reinstated the complaint, holding that plaintiff’s Labor Law causes of action were *587 not preempted by Federal maritime law. The Appellate Division subsequently granted the defendants and third-party defendant leave to appeal to this Court and certified the following question: “Was the order of this Court, which reversed the order of the Supreme Court, properly made?” We agree with the Appellate Division that, under the circumstances presented, plaintiffs Labor Law claims are not preempted.
Initially, the parties agree that there is admiralty subject matter jurisdiction over plaintiffs claims. The existence of admiralty jurisdiction, however, does not resolve the question of which substantive law to apply.
Defendants and third-party defendant (hereafter defendants) maintain that Federal maritime law should apply to the exclusion of plaintiffs Labor Law claims because maritime law does not generally impose liability without actual proof of negligence. New York State Labor Law § 240 (1), however, imposes strict liability upon an owner or contractor (see, Zimmer v Chemung County Performing Arts, 65 NY2d 513). Thus, defendants argue, to impose State liability standards where admiralty jurisdiction exists would disrupt the uniformity of Federal maritime law. In support, defendants rely on the First Department case, Tibak v City of New York (154 AD2d 313, lv denied 75 NY2d 705). In that case (unlike the present case), the First Department determined that the plaintiffs Labor Law claims were superseded by Federal admiralty law, and held that “the rights and liabilities of the parties under the general maritime law cannot be enlarged or impaired by State statute” (id., at 314). Defendants note that the Second Department has taken a similar view with respect to Labor Law § 240 in Eriksen v Long Is. Light. Co. (236 AD2d 439) and Rigopoulos v State of New York (236 AD2d 459).
In response, plaintiff argues that Federal maritime law does not preempt his Labor Law claims because there is no Federal law or interest directly impacted by their implementation. Consequently, plaintiff contends, uniformity of maritime law would not be affected by allowing State law claims here. Plaintiff also maintains that New York has an important interest in regulating safe construction practices within its borders and that there is a presumption against restricting exercise of its police powers to protect the health and safety of its citizens.
The fact that Federal maritime law is involved does not necessarily mean that State law is superseded. “The exercise of admiralty jurisdiction * * * ‘does not result in automatic *588 displacement of state law’ ” (Yamaha Motor Corp., U. S. A. v Calhoun, 516 US 199, 206). Thus, “Federal-court jurisdiction over such cases * * * has never been entirely exclusive” (American Dredging Co. v Miller, 510 US 443, 446). What is unclear is the extent to which State courts may apply their own law in maritime cases. In assessing whether the State rule is preempted, a number of factors may be considered, including whether the State rule conflicts with Federal law, hinders uniformity, makes substantive changes, or interferes with the characteristic features of maritime law or commerce (id., at 446, 447; Madruga v Superior Ct. of Cal., 346 US 556, 561; Southern Pac. Co. v Jensen, 244 US 205, 216).
Federal maritime law often encompasses State law (Yamaha Motor Corp., U. S. A. v Calhoun, 516 US 199, 206, supra). In Western Fuel Co. v Garcia (257 US 233), for example, the United States Supreme Court held that the widow of a maritime worker killed in California territorial waters could bring a wrongful death action in an admiralty court, reasoning that:
“The subject is maritime and local in character and the specified modification of or supplement to the rule applied in admiralty courts when following the common law, will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations” (id., at 242).
Just a month later, in Grant Smith-Porter Ship Co. v Rohde (257 US 469), the Court applied the “maritime but local” rule where a carpenter’s injury occurred in navigable waters. In concluding that State compensation law should apply, the Court stated that “as to certain local matters regulation of which would work no material prejudice to the general maritime law, the rules of the latter might be modified or supplemented by state statutes” (id., at 477). In subsequent cases, the Court has employed the “maritime but local” exception to allow the application of State law in other contexts (see, e.g., Askew v American Waterways Operators, 411 US 325 [regulation of sea-to-shore pollution]; Wilburn Boat Co. v Fireman’s Fund Ins. Co., 348 US 310 [regulation of maritime insurance]).
Plaintiffs theory of liability arises under New York Labor Law § 240 (1) and § 241 (6). Given that protection of workers engaged in maritime activities is an objective of Federal maritime law (Yamaha v Calhoun, 516 US at 214-215, supra), this *589 case is unlikely to disrupt Federal maritime activity (Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co., 513 US 527, 533-534). State application of strict liability here will not “unduly interfere [] with the federal interest in maintaining the free flow of maritime commerce” (American Dredging, 510 US at 458, supra [Souter, J., concurring]). Local regulations that do not affect vessel operations, but rather govern liability issues with respect to landowners and contractors within the State, have no extraterritorial effect.
Nor is the concept of strict liability necessarily antithetical to Federal maritime law. States may have important interests justifying the application of a strict liability statute. Most significantly, recognizing the importance of State police powers to protect the health and safety of its citizens in Askew v American Waterways (411 US 325, supra), the Supreme Court authorized application of a State strict liability statute notwithstanding the general admiralty principle prohibiting strict liability for negligence.
Strict liability causes of action exist for personal injury claims based upon violations of statutory duty (see, Kernan v American Dredging Co., 355 US 426 [employer held liable for death of seaman, without a showing of negligence, where death resulted from violation of Coast Guard regulations]). Similarly, strict liability is a part of Federal maritime products liability law (see, East Riv. S. S. Corp. v Transamerica Delaval, 476 US 858, 865-866). Likewise, maritime law permits recovery in strict liability when a shoreside contractor causes injury to a marine worker as a result of the contractor’s breach of warranty (see, Chisholm v UHP Projects, 205 F3d 731, 734 [4th Cir 2000]). The doctrine of seaworthiness also provides an absolute and nondelegable duty to provide a seaworthy ship (see, Mitchell v Trawler Racer, 362 US 539, 549-550).[2] Finally, the Federal maritime workers’ compensation statute, the LHWCA, is also a strict liability compensation plan where employers are liable to the injured employee irrespective of fault (see, Jones & Laughlin Steel Corp. v Pfeifer, 462 US 523, 528-529).
New York’s Labor Law is a local regulation enacted to protect the health and safety of its workers. As the Appellate Division *590 properly concluded, application of the Labor Law — a local regulation governing liability of landowners and contractors acting within the State (see generally, Padula v Lilarn Props. Corp., 84 NY2d 519) — will not unduly interfere with a fundamental characteristic of maritime law or unduly hamper maritime commerce. Indeed, many Labor Law provisions such as section 200 (1) and section 241 (6) allow for liability predicated on fault and are wholly consistent with the laudatory maritime goal of compensating injured maritime workers. Furthermore, under these circumstances, where the tort was maritime but local and there are no far-reaching implications for vessels, seafarers or entities engaged in maritime commercial transactions, there is no threat to the uniformity of Federal maritime law sufficient to displace application of an important State health and safety measure, even though it may impose strict liability (see, Gravatt v City of New York, 1998 WL 171491, *12, 1998 US Dist LEXIS 4886, *32 [SD NY] [“protecting workers employed in the state is within the historic police powers of the State and there is no ‘clear and manifest’ congressional intent to preempt this state prerogative”]).
We conclude our analysis with the following observation. Choice of law in the admiralty context, generally, is not an easy inquiry. That is particularly true in this case: plaintiff was injured while on a floating raft on navigable waters, but at the same time the raft was anchored to a land-based transfer station, and the work at issue was repair to a land structure. In a case such as this, our decision to affirm is influenced by the Labor Law’s strong State interest in protecting workers (see, e.g., Melber v 6333 Main St., 91 NY2d 759, 762; Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520-521, supra). Because strict liability is not wholly at odds with Federal maritime principles, we see no reason for the Labor Law’s provisions to be displaced in the context of this local land-based repair.
Finally, we underscore that we reach only the preemption issue, the only question decided by the Appellate Division, and we reach no other issue regarding the validity of plaintiffs claims under the Labor Law.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

. A fender system is a series of pilings and wooden cross pieces within the pier at the water’s edge, designed to protect the pier from impact of other vessels leaving and entering the pier.

. Seaworthiness is a strict liability doctrine applicable to seamen (see, Mahnich v Southern S. S. Co., 321 US 96). While the doctrine was extended to longshore workers in Seas Shipping Co. v Sieracki (328 US 85), Congress negated the extension in amending the Longshore and Harbor Workers’ Compensation Act in 1972 (33 USC § 901 et seq.). (See, Pub L 92-576, 86 US Stat 1251.)