[920 NE2d 350, 892 NYS2d 294]

Jᴀᴍᴇꜱ D. Lᴇᴇ, Respondent, v Aꜱᴛᴏʀɪᴀ Gᴇɴᴇʀᴀᴛɪɴɢ Cᴏᴍᴘᴀɴʏ, L.P., et al., Appellants/Third-Party Plaintiffs-Appellants. Eʟ-ʟɪᴏᴛᴛ Tᴜʀʙᴏᴍᴀᴄʜɪɴᴇʀʏ Co., Iɴᴄ., et al., Third-Party Defendants-Appellants.

Argued October 20, 2009; decided November 23, 2009

**POINTS OF COUNSEL**

*Mauro Goldberg & Lilling LLP,* Great Neck (*Barbara D. Gold-berg* and *Deborah F. Peters* of counsel), and *Robin Harris King & Fodera* for appellants/third-party plaintiffs-appellants. I. The First Department misapplied the Supreme Court's definition of

"vessel" in *Stewart v Dutra Constr. Co.* (543 US 481 [2005]). (*Board of Commrs. of Orleans Levee Dist. v M/V Belle of Orleans,* 535 F3d 1299; *Pavone v Mississippi Riverboat Amusement Corp.,* 52 F3d 560; *Tagliere v Harrah's Ill. Corp.,* 445 F3d 1012; *De La Rosa v St. Charles Gaming Co.,* 474 F3d 185; *Holmes v Atlantic Sounding Co., Inc.,* 437 F3d 441; *Uzdavines v Weeks Mar., Inc.,* 418 F3d 138; *Gravatt v City of New York,* 53 F Supp 2d 388, 73 F Supp 2d 438, 226 F3d 108, 532 US 957; *Calcaterra v City of New York,* 45 AD3d 270; *Emanuel v Sheridan Transp. Corp.,* 10 AD3d 46; *Cain v Transocean Offshore USA, Inc.,* 518 F3d 295.) II. The Longshore and Harbor Workers' Compensation Act expressly preempts state court claims against vessel owners based on vicarious liability. (*City of New York v Job-Lot Pushcart,* 88 NY2d 163; *Scindia Steam Nav. Co. v De los Santos,* 451 US 156; *Northeast Marine Terminal Co. v Caputo,* 432 US 249; *FMC Corp. v Holliday,* 498 US 52; *Cammon v City of New York,* 95 NY2d 583; *Tibak v City of New York,* 154 AD2d 313, 75 NY2d 705; *Executive Jet Aviation, Inc. v Cleveland,* 409 US 249; *Tompkins v Port of N.Y. Auth.,* 217 AD2d 269; *Rigopoulos v State of New York,* 236 AD2d 459; *Eriksen v Long Is. Light. Co.,* 236 AD2d 439.) III. The First Department erred in granting plaintiff partial summary judgment on his Labor Law § 240 (1) claim and in failing to dismiss his Labor Law § 241 (6) claim. (*Stewart v Dutra Constr. Co.,* 543 US 481; *Joblon v Solow,* 91 NY2d 457; *Prats v Port Auth. of N.Y. & N.J.,* 100 NY2d 878; *Manente v Ropost, Inc.,* 136 AD2d 681; *Edwards v Twenty-Four Twenty-Six Main St. Assoc.,* 195 AD2d 592; *Jock v Fien,* 80 NY2d 965; *Nagel v D & R Realty Corp.,* 99 NY2d 98; *Allen v Cloutier Constr. Corp.,* 44 NY2d 290; *Walton v Devi Corp.,* 215 AD2d 60, 87 NY2d 809; *Rhodes-Evans v 111 Chelsea LLC,* 44 AD3d 430.)

*Hofmann & Associates,* New York City (*Paul T. Hofmann* of counsel), for respondent. I. The structure worked on is only a component of a land-based electric distribution system situated on a floating platform and no vessel repair was being performed; thus, neither maritime law nor 33 USC § 905 (b) apply to plaintiff's claims. (*Grant Smith-Porter Ship Co. v Rohde,* 257 US 469; *Palanquet v Weeks Mar., Inc.,* 333 F Supp 2d 58; *McAllister v G & S Invs.,* 358 F Supp 2d 146; *Cammon v City of New York,* 260 AD2d 70, 95 NY2d 583; *Olsen v James Miller Mar. Serv., Inc.,* 16 AD3d 169.) II. The floating platform was not "a vessel in navigation." Neither is there a maritime "situs" involved here; thus, 33 USC § 905 (b) and maritime jurisdiction do not apply to the claim. (*Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co.,* 513 US 527; *De La Rosa v St. Charles*

*Gaming Co.,* 474 F3d 185; *Victory Carriers, Inc. v Law,* 404 US 202; *Watson v Indiana Gaming Co., LP,* 337 F Supp 2d 951; *Sisson v Ruby,* 497 US 358; *Stewart v Dutra Constr. Co.,* 543 US 481; *Evansville & Bowling Green Packet Co. v Chero Cola Bottling Co.,* 271 US 19; *Pavone v Mississippi Riverboat Amusement Corp.,* 52 F3d 560; *Cope v Vallette Dry Dock Co.,* 119 US 625; *Kathriner v UNISEA, Inc.,* 975 F2d 657.) III. There would be no maritime jurisdiction here as the injury-causing event shows no connection to a maritime activity. (*Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co.,* 513 US 527; *Sisson v Ruby,* 497 US 358; *H2O Houseboat Vacations, Inc. v Hernandez,* 103 F3d 914; *Foster v Peddicord,* 826 F2d 1370, 484 US 1027; *Executive Jet Aviation, Inc. v Cleveland,* 409 US 249; *Texaco Exploration & Prod., Inc. v AmClyde Engineered Prods. Co., Inc.,* 448 F3d 760; *Palanquet v Weeks Mar., Inc.,* 333 F Supp 2d 58; *King v President Riverboat Casino-Mississippi, Inc.,* 894 F Supp 1008; *Emanuel v Sheridan Transp. Corp.,* 10 AD3d 46.) IV. As no maritime jurisdiction exists, state law is applicable. (*Ducrepont v Baton Rouge Mar. Enters., Inc.,* 877 F2d 393; *Richendollar v Diamond M Drilling Co., Inc.,* 819 F2d 124; *De La Rosa v St. Charles Gaming Co., Inc.,* 474 F3d 185; *Howard v Southern Ill. Riverboat Casino Cruises, Inc.,* 364 F3d 854; *Heim v City of New York,* 442 F Supp 35; *Parker v South La. Contrs., Inc.,* 537 F2d 113; *Florida Fuels, Inc. v Citgo Petroleum Corp.,* 6 F3d 330; *Wiper v Great Lakes Eng'g Works,* 340 F2d 727, 382 US 812; *Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co.,* 513 US 527.) V. Assuming the Court has maritime jurisdiction with respect to Astoria Generating Company, L.P. and the Orion parties, James Lee's state law claims are not preempted by maritime law. (*Western Fuel Co. v Garcia,* 257 US 233; *Grant Smith-Porter Ship Co. v Rohde,* 257 US 469; *Parker v Motor Boat Sales, Inc.,* 314 US 244; *Davis v Department of Labor & Industries of Wash.,* 317 US 249; *Calbeck v Travelers Ins. Co.,* 370 US 114; *Yamaha Motor Corp., US A. v Calhoun,* 516 US 199; *Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co.,* 513 US 527; *Cammon v City of New York,* 95 NY2d 583; *Casino Ventures v Stewart,* 183 F3d 307; *California v ARC America Corp.,* 490 US 93.) VI. Even if the Labor Law § 240 claim may be subject to preemption, there is no dispute that the Labor Law § 241 (6) claims survive if maritime law applies. (*Songui v City of New York,* 2 AD3d 706; *Cammon v City of New York,* 95 NY2d 583; *Eriksen v Long Is. Light. Co.,* 236 AD2d 439; *Pope & Talbot, Inc. v Hawn,* 346 US 406; *Olsen v James Miller Mar. Serv., Inc.,* 16 AD3d 169.) VII. 33 USC § 905 (b) is inapplicable because the

claim is against the landowner and enterprise operator. (*Emanuel v Sheridan Transp. Corp.*, 10 AD3d 46; *Wilburn Boat Co. v Fireman's Fund Ins. Co.*, 348 US 310; *Cammon v City of New York*, 95 NY2d 583; *North Riv. Ins. Co. v Alpine Dev. Corp.*, 33 AD2d 912; *Tully v Roosevelt Props.*, 34 AD2d 786; *Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343; *Kelly v Diesel Constr. Div. of Carl A. Morse, Inc.*, 35 NY2d 1; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513; *Haimes v New York Tel. Co.*, 46 NY2d 132; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494.) VIII. Under a *Scindia* analysis, liability exists in this matter, assuming 33 USC § 905 (b) is applicable. (*Scindia Steam Nav. Co. v De los Santos*, 451 US 156; *O'Hara v Weeks Mar., Inc.*, 294 F3d 55; *Keller v United States*, 38 F3d 16; *England v Reinauer Transp. Cos., L.P.*, 194 F3d 265; *Emanuel v Sheridan Transp. Corp.*, 10 AD3d 46.) IX. Plaintiff was performing construction at the time of his injury. (*Rico-Castro v Do & Co N.Y. Catering, Inc.*, 60 AD3d 749; *Joblon v Solow*, 91 NY2d 457; *Kinsler v Lu-Four Assoc.*, 215 AD2d 631; *Walton v Devi Corp.*, 215 AD2d 60; *Brogan v International Bus. Machs. Corp.*, 157 AD2d 76; *Salzler v New York Tel. Co.*, 192 AD2d 1104; *Lozo v Crown Zellerbach Corp.*, 142 AD2d 949.) X. It was within the court's discretion to search the record and grant plaintiff summary judgment.

*Lester Schwab Katz & Dwyer, LLP,* New York City (*Curt J. Schiner, John Sandercock* and *Steven B. Prystowsky* of counsel), for third-party defendants-appellants. I. In finding that Gowanus Bay No. 1 is not a "vessel" within the meaning of the Longshore and Harbor Workers' Compensation Act, the Appellate Division majority ignored key facts and misapplied controlling federal authority. (*Stewart v Dutra Constr. Co.*, 543 US 481; *Kathriner v UNISEA, Inc.*, 975 F2d 657; *Pavone v Mississippi Riverboat Amusement Corp.*, 52 F3d 560; *Uzdavines v Weeks Mar., Inc.*, 418 F3d 138; *Tonnesen v Yonkers Contr. Co., Inc.*, 82 F3d 30; *McCarthy v Bark Peking*, 716 F2d 130; *Board of Commrs. of Orleans Levee Dist. v M/V Belle of Orleans*, 535 F3d 1299; *Tagliere v Harrah's Ill. Corp.*, 445 F3d 1012; *Matter of Consolidated Edison Co. of N.Y. v City of New York*, 44 NY2d 536; *De La Rosa v St. Charles Gaming Co.*, 474 F3d 185.) II. Labor Law § 240 (1) is preempted by general maritime law as well as the Longshore and Harbor Workers' Compensation Act because it conflicts with characteristic features of maritime law and defendants are not landowners. (*Panama R. Co. v Johnson*, 264 US 375; *Wilburn Boat Co. v Fireman's Fund Ins. Co.*, 348 US 310; *Robins Dry Dock & Repair Co. v Dahl*, 266 US 449; *Grant Smith-Porter Ship Co. v Rohde*, 257 US 469; *Rocovich v*

*Consolidated Edison Co.,* 78 NY2d 509; *Rizzuto v L.A. Wenger Contr. Co.,* 91 NY2d 343; *American Dredging Co. v Miller,* 510 US 443; *Southern Pacific Co. v Jensen,* 244 US 205; *Cammon v City of New York,* 95 NY2d 583; *Pope & Talbot, Inc. v Hawn,* 346 US 406.) III. The Appellate Division erred in searching the record and granting plaintiff partial summary judgment on liability under Labor Law § 240 (1). (*Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Blake v Neighborhood Hous. Servs. of N.Y. City,* 1 NY3d 280; *Gordon v Eastern Ry. Supply,* 82 NY2d 555; *Bland v Manocherian,* 66 NY2d 452; *Jastrzebski v North Shore School Dist.,* 223 AD2d 677; *Romano v Hotel Carlyle Owners Corp.,* 226 AD2d 441; *Grullon v City of New York,* 297 AD2d 261; *Dunham v Hilco Constr. Co.,* 89 NY2d 425; *Montgomery v Federal Express Corp.,* 4 NY3d 805; *Robinson v East Med. Ctr., LP,* 6 NY3d 550.) IV. The Appellate Division should not have reinstated plaintiff's Labor Law § 241 (6) claim. (*Jock v Fien,* 80 NY2d 965; *Esposito v New York City Indus. Dev. Agency,* 1 NY3d 526; *Nagel v D & R Realty Corp.,* 99 NY2d 98; *Buckley v Columbia Grammar & Preparatory,* 44 AD3d 263; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Gillman v Columbia University,* 18 Misc 3d 1131[A], 2008 NY Slip Op 50256[U]; *Plass v Solotoff,* 5 AD3d 365.)

**OPINION OF THE COURT**

JONES, J.

In this appeal, we are called upon to determine whether a barge containing an electricity generating turbine is a vessel under the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 USC § 905 [b]) and whether that provision preempts New York State Labor Law § 240 (1) and § 241 (6) claims. We hold that the barge is a vessel and plaintiff's Labor Law § 240 (1) and § 241 (6) claims are preempted.

The Gowanus Gas Turbine electric generation facility in Brooklyn is a facility owned and operated by defendants Astoria Generating Company, L.P., Orion Power New York GP, Inc., Orion Power New York, L.P. and Orion Power New York LP, LLC (Astoria/Orion). The site, located on navigable waters in the Gowanus Canal, is comprised, in part, of four barges that are each 80 feet wide by 200 feet long that collectively house eight individual gas turbine generating units. While stationed, the barges are afloat in the bay and connected to a power grid. Periodically, approximately once a decade, the barges are moved to dry dock for maintenance. They are also capable of being moved for the purpose of providing electric power at other

locations. Two of the barges had been so moved on at least one occasion.

In 2000, Astoria/Orion hired third-party defendants Elliott Turbomachinery Co., Inc. and Elliott Company (Elliott), a company based in Pennsylvania, to perform an overhaul of the turbines at the Gowanus facility. This involved disassembling the entire turbine, shipping parts of it back to Elliott's shop in Pennsylvania for restoration or replacement, and returning it to the site for Elliott's millwrights to reassemble. In 2001, plaintiff, a millwright employed by Elliott, injured his back while performing work on a turbine on barge No. 1 at the facility. According to plaintiff, he was ordered by his supervisor to enter the turbine's exhaust well through a hatch to weld some fixtures inside. To reach the location of the repair, plaintiff used a ladder to access the exhaust well and entered the hatch. From there, he was to climb down the base of the exhaust well, but his feet slipped from under him and he fell eight feet to the base of the exhaust well, injuring his back.

After the accident, plaintiff claimed and was awarded benefits under the LHWCA, which "provides workers' compensation to *land*-based maritime employees" (*Stewart v Dutra Constr. Co.*, 543 US 481, 488 [2005]). He also commenced this state court action against Astoria/Orion, asserting Labor Law §§ 200, 240 (1) and § 241 (6) claims and common-law negligence claims. Astoria/Orion subsequently filed a third-party complaint against Elliott seeking indemnification.

Elliott moved for summary judgment dismissing the complaint and third-party complaint, arguing, among other things, that 33 USC § 905 (a)[1] precludes lawsuits against it as an employer of the injured worker and that plaintiff's state claims were preempted by section 905 (b)[2] and federal maritime law. The barge owners cross-moved for summary judgment, also arguing

---

**1.** "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee" (33 USC § 905 [a]). Section 904 (a) provides that "[e]very employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title."

**2.** "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party . . . and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the

that the plaintiff's claims were preempted. In opposition, plaintiff argued that the claims were not preempted because (1) the barge did not constitute a vessel under section 905 (b) and (2) maritime jurisdiction did not apply to his claims against the barge owners.

Supreme Court granted summary judgment dismissing the complaint and third-party complaint (2007 NY Slip Op 34371[U]). It concluded, among other things, that section 905 of the LHWCA preempted the Labor Law § 240 (1) and § 241 (6) claims. The court adopted the Department of Labor's determination that plaintiff is a covered employee under the LHWCA and concluded the barge is a vessel under recent federal case law. It also dismissed plaintiff's Labor Law § 200 and common-law negligence claims.

The Appellate Division "reversed" the Supreme Court order, reinstated plaintiff's Labor Law § 240 (1) and § 241 (6) claims and granted summary judgment as to the Labor Law § 240 (1) claim in plaintiff's favor.[3] It held that the Labor Law claims are not precluded by the LHWCA because the barge is not a vessel. It further stated, "even if the barge were a vessel, federal maritime jurisdiction would not preempt these claims" (55 AD3d 124, 126 [1st Dept 2008]). The Appellate Division granted Astoria/Orion and Elliott leave to appeal and certified the following question to this Court: "Was the order of this Court, which reversed the order of Supreme Court, properly made?" We now reverse and answer the certified question in the negative.

The LHWCA provides compensation to workers injured on navigable waters of the United States in the course of their employment (*Director, Office of Workers' Compensation Programs v Perini North River Associates*, 459 US 297, 325 [1983]; see *Chandris, Inc. v Latsis*, 515 US 347, 360 [1995]).[4] It operates as a no-fault workers' compensation scheme for eligible

contrary shall be void . . . The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter" (33 USC § 905 [b]).

3. It appears that the Appellate Division affirmed the dismissal of plaintiff's Labor Law § 200 and common-law negligence claims. Astoria/Orion did not appeal the denial of that part of their summary judgment motion that sought relief on the third-party complaint.

4. In *Perini North River*, the Supreme Court explained the history of the LHWCA. Prior to 1972, the LHWCA applied only to injuries that occurred on navigable waters (*Perini North River*, 459 US at 313). In 1972, Congress

workers and precludes recovery of damages against their employer (33 USC § 905 [a]). The LHWCA also permits an injured employee to recover damages against a third person other than his or her employer (33 USC § 933 [a]). Section 905 (b) of the LHWCA, consistent with section 933 (a), permits an injured person covered under the Act to bring an action in negligence against a vessel, but provides that such remedy "shall be exclusive of all other remedies against the vessel except remedies available under this chapter." Contrary to the dissent's position, one need not conclude that plaintiff is entitled to assert a maritime tort claim to invoke section 905 (b) where the worker was injured on navigable waters (*see e.g. Stewart*, 543 US 481 [2005] [discussing the application of section 905 (b) without any maritime tort inquiry]).[5] Section 905 (b) of the LHWCA applies to the "injury to a person covered under this chapter" where the liability of a vessel is at issue. Thus, because the LHWCA covers plaintiff's injury upon navigable waters, whether section 905 (b) applies in this case hinges upon whether the structure upon which plaintiff was injured is a vessel. Although the LHWCA does not define "vessel," the United States Supreme Court has provided detailed guidance concerning the definition and characteristics of a vessel, holding that the statutory definition of the term in 1 USC § 3 is applicable in this context.

A " 'vessel' includes every description of water-craft or other artificial contrivance used, or capable of being used, as a means

---

expanded the coverage landward and created a scope of persons covered, which became the situs and status test (*id.* at 317-318). The *Perini North River* Court then held that "when a worker is injured on the actual navigable waters in the course of his employment on those waters, he satisfies the status requirement . . . and is covered under the LHWCA" (*id.* at 324). The Court noted that "Congress was concerned with injuries on land, and assumed that injuries occurring on the actual navigable waters were covered, and would remain covered" (*id.* at 319).

5. The dissent's reliance upon *Executive Jet Aviation, Inc. v Cleveland* (409 US 249 [1972]) and *McLaurin v Noble Drilling (U.S.), Inc.* (529 F3d 285 [5th Cir 2008]) is misplaced—neither of those cases involved claims traditionally covered under the LHWCA. The Supreme Court created the maritime tort inquiry in *Executive Jet*. There, the Court "concluded that maritime locality alone is not a sufficient predicate for admiralty jurisdiction in aviation tort cases" (409 US at 261). In *McLaurin*, the Fifth Circuit continued the use of such inquiry in the context of a shipyard accident. The court, noting that "[i]njury on navigable waters is a sine qua non of the maritime tort, . . . held that a maritime worker injured on dry land cannot sustain a cognizable injury under § 905 (b) of the LHWCA" (529 F3d at 290 [internal quotation marks and citation omitted]).

of transportation on water" (*Stewart v Dutra Constr. Co.*, 543 US 481, 489 [2005], quoting 1 USC § 3). Structures temporarily stationed in a particular location maintain their status as vessels. However, floating structures that are "not practically capable of being used as a means of transportation" do not qualify as vessels (*id.* at 493 [internal quotation marks and citation omitted]). Such floating structures (non-vessels) are permanently fixed or moored "to shore or resting on the ocean floor" (*id.* at 493-494).

■ Here, the barge, located on navigable waters in Gowanus Bay, is a vessel within the LHWCA. The barges owned by Astoria/Orion have been tugged on water approximately once a decade to a maintenance station and, at least once, to provide energy to another part of New York City in an emergency. Thus, the barge at issue is practically capable of being used as a means of transportation on water. Although the barge is stationed at the Gowanus facility, because it is not permanently anchored or moored, it has not lost its status as a vessel. Accordingly, the barge is a vessel under section 905 (b).

The remaining issue is whether section 905 (b) preempts plaintiff's Labor Law § 240 (1) and § 241 (6) claims. It is well recognized that the Supremacy Clause (US Const, art VI, cl 2) " 'may entail pre-emption of state law either by express provision, by implication, or by a conflict between federal and state law' " (*Balbuena v IDR Realty LLC*, 6 NY3d 338, 356 [2006], quoting *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 US 645, 654 [1995]). Congress' intent to preempt "may be explicitly stated in the statute's language or implicitly contained in its structure and purpose. In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law" (*Cipollone v Liggett Group, Inc.*, 505 US 504, 516 [1992] [internal quotation marks and citation omitted]). State law will not "be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress" (*New York State Conference of Blue Cross & Blue Shield Plans*, 514 US at 655).

■ Here, the LHWCA clearly states in section 905 (b) that an action in negligence may be brought against a vessel and that such remedy "shall be exclusive of all other remedies against the vessel except remedies available under this chapter." Congress clearly intends that actions maintained against a vessel be brought solely within the confines of the LHWCA and nowhere in the Act does it permit strict liability claims, as

provided in Labor Law § 240 (1) and § 241 (6). Therefore, section 905 (b) of the LHWCA expressly preempts plaintiff's Labor Law § 240 (1) and § 241 (6) claims. Contrary to the Appellate Division's alternative holding, *Cammon v City of New York* (95 NY2d 583 [2000]) does not support the premise that New York's Labor Law is not preempted by section 905 (b). *Cammon* involved an injured worker receiving benefits under the LHWCA and a defendant landowner. Thus, this case did not involve section 905 (b), "Negligence of vessel," as set forth in the LHWCA. While it is true that federal maritime law does not generally supersede state law (*see Cammon*, 95 NY2d at 587), in this case, where Congress explicitly limited claims against the vessel owner to that federal act, state law claims are preempted.

Accordingly, the order of the Appellate Division should be reversed, with costs, the order of Supreme Court reinstated and the certified question answered in the negative.

CIPARICK, J. (dissenting). Because plaintiff cannot assert a maritime tort claim for vessel negligence against the vessel owner, section 905 (b) of the Longshore and Harbor Workers' Compensation Act does not apply to preempt his state law claims. Accordingly, I respectfully dissent.

The Longshore and Harbor Workers' Compensation Act (LHWCA or the Act) (33 USC § 901 *et seq.*) establishes workers' compensation benefits to "land-based maritime workers" (*Stewart v Dutra Constr. Co.*, 543 US 481, 488 [2005]; *see also McLaurin v Noble Drilling [U.S.], Inc.*, 529 F3d 285, 289 [5th Cir 2008]). Under the LHWCA, qualified employees injured during the course of their employment may, regardless of fault, recover workers' compensation benefits from their employers (*see* 33 USC § 904). An injured employee may also seek to recover against a vessel owner where the negligence of the vessel caused his or her injuries (*see* 33 USC § 905 [b]). Specifically, section 905 (b) of the LHWCA provides,

> "In the event of injury to a person covered under [the LHWCA] caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void

. . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. *The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter"* (emphasis added).

If there is no remedy provided by section 905 (b), there is no "exclusive remedy" that preempts state law actions. Section 905 (b) does not create a new statutory negligence cause of action or maritime tort, nor does it extend or create new admiralty jurisdiction (*see Richendollar v Diamond M Drilling Co., Inc.,* 819 F2d 124, 128 [5th Cir 1987]). Rather, it merely preserves an injured employee's right to recover for vessel negligence under existing maritime law (*see Kerr-McGee Corp. v Ma-Ju Mar. Servs., Inc.,* 830 F2d 1332, 1339 [5th Cir 1987]; *see also In re Donjon Mar. Co., Inc.,* 2008 WL 3153721, 2008 US Dist LEXIS 59102 [SD NY 2008]). If a plaintiff cannot state a cause of action for a maritime tort, section 905 (b) does not provide any remedy and so does not apply to preempt state law causes of action against vessel owners (*see McLaurin,* 529 F3d at 289; *see also Robertson v Arco Oil & Gas Co.,* 766 F Supp 535, 537-538 [WD La 1991] [where the plaintiff's claim fell within admiralty jurisdictions, "(h)is maritime law remedy against the vessel owner . . . consist(ed) of a section 905 (b) suit for negligence"]). Thus, to determine whether a plaintiff's state claims are preempted by the "exclusive remedy" language of section 905 (b), a court must first ascertain whether the plaintiff can state a maritime tort claim for vessel negligence against the vessel owner.[1]

A tort claim qualifies as a "maritime tort" and falls under the federal courts' admiralty jurisdiction where the injury satisfies a maritime situs/status test (*see Richendollar,* 819 F2d at 127).[2] That is, "when the wrong (1) took place on navigable waters

---

1. This Court has a history of preserving state claims where doing so is not inconsistent with the federal scheme (*see e.g. Matter of People v Applied Card Sys., Inc.,* 11 NY3d 105 [2008]; *Arons v Jutkowitz,* 9 NY3d 393 [2007]). As the Appellate Division noted, this is particularly true in cases involving the health and safety of our workers (*see e.g. Balbuena v IDR Realty LLC,* 6 NY3d 338 [2006]; *Cammon v City of New York,* 95 NY2d 583 [2000]), a matter which has historically been within the police powers of the State.

2. The majority conflates the issue of workers' compensation benefits under the Act with the potential maritime tort remedy under the Act (*see* majority op at 389-390). As to the former, a covered worker need only sustain some

('situs') and (2) 'bear[s] a significant relationship to traditional maritime activity' ('status'),'' the alleged wrong may be susceptible to suit under a maritime tort cause of action (*Keene Corp. v United States*, 700 F2d 836, 843 [2d Cir 1983], quoting *Executive Jet Aviation, Inc. v Cleveland*, 409 US 249, 268 [1972]). In *Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co.* (513 US 527 [1995]), the Supreme Court explained the status test, or "connection" test, as having two components:

> "The connection test raises two issues. A court, first, must 'assess the general features of the type of incident involved,' to determine whether the incident has 'a potentially disruptive impact on maritime commerce.' Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.' " (*Id.* at 534 [citations omitted], quoting *Sisson v Ruby*, 497 US 358, 363, 364 n 2, 365 [1990].)

The federal courts have considered various factors to determine whether an alleged wrong bears a significant relationship to traditional maritime activity, including:

> "1) the functions and roles of the parties; 2) the types of vehicles and instrumentalities; 3) the causation and type of injury; 4) traditional concepts of the role of admiralty law; 5) the impact of the event on maritime shipping and commerce; 6) the desirability of a uniform national rule to apply to such matters, and 7) the need for admiralty 'expertise' in the trial and decision of the case" (*Ciolino v Sciortino Corp.*, 721 F Supp 1491, 1493 [D Mass 1989], citing *Shea v Rev-Lyn Contr. Co., Inc.*, 868 F2d 515, 517-518 [1st Cir 1989], *Drake v Raymark Indus., Inc.*, 772 F2d 1007 [1st Cir 1985], *Molett v Penrod Drilling Co.*, 826 F2d 1419, 1426 [5th Cir 1987], *Oman v Johns-Manville Corp.*, 764 F2d 224, 230

---

injury on the navigable waters to satisfy the status test for workers' compensation benefits (*see Director, Office of Workers' Compensation Programs v Perini North River Associates*, 459 US 297, 324 [1983]). As to the latter—the tort claim—the alleged wrong must "bear[ ] a significant relationship to traditional maritime activity" (*Executive Jet Aviation, Inc. v Cleveland*, 409 US 249, 268 [1972]). The federal courts have recently used the *Executive Jet* test to ascertain whether a plaintiff can assert a section 905 (b) vessel negligence claim (*see e.g. McLaurin*, 529 F3d at 289).

[4th Cir 1985]; *Harville v Johns-Manville Prods. Corp.*, 731 F2d 775, 779-787 [11th Cir 1984], and *Kelly v Smith*, 485 F2d 520, 525 [5th Cir 1973]).

As stated by the majority opinion, here, plaintiff's injury occurred in navigable waters on a "vessel," as the Supreme Court recently broadly defined that term in *Stewart* (543 US at 495).[3] Thus, the "situs" test for a maritime tort sounding in negligence is satisfied (*see Executive Jet Aviation*, 409 US at 268). However, the status test is not satisfied because plaintiff's activity on defendant's vessel bore no cognizable relationship to maritime activity or commerce. As a result, section 905 (b) cannot apply to preempt plaintiff's state law claims against the vessel owner (*see e.g. McLaurin*, 529 F3d at 291-292).

Plaintiff was employed by third-party defendant Elliott as a millwright to perform substantial mechanical work on gas turbine electrical generating units owned by defendant/third-party plaintiff. These generating units happened to be housed on defendant's barges, i.e., vessels; however, other than their incidental location upon navigable waters, no other features of the gas turbine electrical generating units—nor of plaintiff's employment working on those units—bore any relation to a traditional maritime activity or to maritime commerce (*see Jerome B. Grubart, Inc.*, 513 US at 534). Indeed, the gas turbines are part of a power-generating operation that includes land-based structures adjacent to the barge turbines. Electricity generated by the barge turbines is conveyed over power lines, which are land-based, for transmission to energy consumers.

In *Matter of Consolidated Edison Co. of N.Y. v City of New York* (44 NY2d 536 [1978]), we determined that, for the purposes of taxation, the barges were properly "classified as structures affixed to the land on which is situated the land-based distribution system to which [the barges] are physically connected and integrally related," and, as such, could be taxed as real property rather than personal property (*id.* at 542). A structure so entwined with a land-based energy production operation that

---

3. *Stewart*, although instructive for limited purposes here, is distinguishable on its facts. In that case, the plaintiff, a marine engineer, was injured when a dredge collided with a vessel (a scow) upon navigable waters (*see* 543 US at 485). The plaintiff had been hired by the dredge's owner "to maintain the mechanical systems" of the dredge (*id.*). The Supreme Court observed that the "question in th[e] case [was] whether a dredge is a 'vessel' under § 2 (3) (G) of the Longshore and Harbor Workers' Compensation Act" (*id.* at 484). Notably, after answering that narrow question, the Court remitted the matter for further proceedings.

we saw fit to permit its taxation as real property plainly has no relation to any traditional maritime activity.[4]

That plaintiff recovered workers' compensation benefits under the LHWCA is of no import, inasmuch as the question whether plaintiff can recover no-fault benefits under the Act is distinct from the question whether he can recover in maritime tort for vessel negligence under section 905 (b). Significantly, section 933 (a) of the LHWCA expressly recognizes that an employee covered by the LHWCA may have state law remedies against third parties other than his or her employer (*see McLaurin*, 529 F3d at 292). As the United States Court of Appeals for the Fifth Circuit explained in *McLaurin*,

> "[s]ection 933 specifically forbids a claim against the employer or a person in his employ, leaving [section] 904 [workers' compensation claims] as the only avenue of recovery against the employer or a negligent coworker . . .

> "Notably, unlike employers, vessel owners are not mentioned in [section] 933, so a maritime worker may attempt to recover against a vessel owner for vessel negligence under [section] 905 (b) [or] against

---

4. While *Cammon v City of New York* does not form the basis for this dissent, the majority is mistaken to reject that case out of hand as distinguishable. To be sure, *Cammon* involved an action by an employee against a property owner—but so does this case. During an earlier hearing to determine plaintiff's eligibility for LHWCA workers' compensation benefits, the testimony of Astoria/Orion's asset manager, Liam Baker, indicated that, at a minimum, Astoria/Orion owned the electrical lines connecting the barges to Consolidated Edison's substation, and implied that Astoria/Orion owned the piers to which the barges were moored. Moreover, notably, when asked to describe the distance between Consolidated Edison's substation and Astoria/Orion's generating barges, Baker observed that substation abutted the "property line" of Astoria/Orion, approximately 100 yards from the barges. Thus, here, plaintiff was injured while working on a barge attached to Astoria/Orion's land, and, as noted, we have already determined—albeit for tax purposes—that the barges are taxable as real property. In short, plaintiff was injured while working on the vessel portion of Astoria/Orion's integrated power generating station. In my view, the holding of *Cammon* would apply with equal force here, and bears repeating: "State application of strict liability here will not 'unduly interfere[ ] with the federal interest in maintaining the free flow of maritime commerce' . . . Local regulations that do not affect vessel operations, but rather govern liability issues with respect to landowners and contractors within the State, have no extraterritorial effect" (95 NY2d at 589, quoting *American Dredging Co. v Miller*, 510 US 443, 458 [1994, Souter, J., concurring]).

a vessel owner as a third-party tortfeasor under [section] 933" (529 F3d at 292, quoting 33 USC § 933 [a] [internal quotation marks and original alterations omitted]).

The plain language of section 905 (b) makes recovery under that section the "exclusive remedy" where an injured employee has a cause of action for vessel negligence. However, where, as here, the injured employee has no cause of action for vessel negligence under maritime law, section 933 of the LHWCA expressly recognizes and preserves state law causes of actions against third parties, including vessel owners who are not also employers.

Accordingly, I would affirm the order of the Appellate Division reinstating plaintiff's Labor Law claims against the owner of the barges, Astoria/Orion, and granting plaintiff partial summary judgment on the section 240 (1) claim.

Judges GRAFFEO, READ, SMITH and PIGOTT concur with Judge JONES; Judge CIPARICK dissents and votes to affirm in a separate opinion in which Chief Judge LIPPMAN concurs.

Order reversed, etc.