■ JOSEPH PIPIA et al., Appellants-Respondents, v TURNER CONSTRUCTION COMPANY et al., Respondents-Appellants. [980 NYS2d 392]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered June 18, 2012, which denied plaintiffs' motion for summary judgment as to liability on the Labor Law §§ 240 (1) and 241 (6) claims as against defendants Turner Construction Company, Governor's Island Preservation and Education Corporation (GIPEC), and Trevcon Construction Inc., granted the cross motion by the aforesaid defendants and defendants City of New York and New York City Economic Development Corporation (NYCEDC) for summary judgment dismissing the complaint, and sub silentio denied the motion by all the aforesaid defendants for summary judgment on their cross claims against defendant J.E.S. Plumbing & Heating Corp. (JES), unanimously modified, on the law, to grant plaintiffs' motion for partial summary judgment on the Labor Law § 240 (1) claim as against Turner and GIPEC, to deny the motion by all defendants except JES (hereinafter, defendants) for summary judgment dismissing the Labor Law § 240 (1) claim as against Turner and GIPEC and the Labor Law § 200 and common-law negligence claims as against Trevcon to the extent they are based on the alleged defective hole in the float stage, and to grant defendants' motion for summary judgment on the cross claims against JES for breach of contract to procure insurance for Turner, Trevcon and NYCEDC, and otherwise affirmed, without costs. Appeal therefrom by JES, unanimously dismissed, without costs, as taken by a non-aggrieved party. Order, same court and Justice, entered June 18, 2012, which denied as moot defendant JES's motion for summary judgment dismissing the cross claims against it, unanimously modified, on the law, to grant the motion as to the cross claims for contractual indemnification of defendants GIPEC, Turner, and Trevcon and the cross claims for breach of contract to procure insurance for GIPEC and the City, and otherwise affirmed, and appeal therefrom by plaintiffs and defendants unanimously dismissed, without costs, as taken by non-aggrieved parties. Order, same court and Justice, entered June 20, 2012, which denied as moot plaintiffs' motion to strike certain affirmative defenses or vacate the stipulation of discontinuance of the negligence action as against defendant JES, unanimously affirmed, without costs.

Since the accident in which plaintiff Joseph Pipia (hereinafter plaintiff) was injured occurred in navigable waters, and plaintiff,

an employee who was covered by the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 USC § 901 *et seq.*), has been receiving benefits thereunder, federal maritime law is applicable to this case (*see Olsen v James Miller Mar. Serv., Inc.*, 16 AD3d 169 [1st Dept 2005]). Plaintiff may not sue his employer, JES, since the LHWCA "precludes recovery of damages against [the injured worker's] employer" (*Lee v Astoria Generating Co., L.P.*, 13 NY3d 382, 390 [2009], *cert denied* 562 US —, 131 S Ct 215 [2010]). Plaintiff's arguments in support of his motion to vacate the stipulation of discontinuance against JES are unavailing.

Plaintiff is also barred from asserting any claims other than Labor Law § 200 and common-law negligence claims against Trevcon, the vessel owner (*see* 33 USC § 933; *Eldoh v Astoria Generating Co., L.P.*, 81 AD3d 871, 874 [2d Dept 2011]). Contrary to plaintiff's contention, the float stage involved in his accident constituted a "vessel" for purposes of the LHWCA (*see Stewart v Dutra Constr. Co.*, 543 US 481 [2005]). While it consisted of wooden planks bolted together, had limited weight capacity and could only be moved short distances from the pier, it was regularly used to carry workers and materials around the water. Although it generally was tied to land structures with a line, it sometimes was untied to allow a worker to move to a different location to pick up materials from the pier. Like the vessel at issue in *Stewart*, which "navigate[d] short distances by manipulating its anchors and cables" (543 US at 484), the float stage, which had no motor, was moved across the water by a combination of a line and a long wooden stick. "[A] reasonable observer, looking to the [float stage]'s physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water" (*Lozman v City of Riviera Beach*, 568 US —, —, 133 S Ct 735, 741 [2013]).

The LHWCA does not, however, preempt any of plaintiff's claims against GIPEC and Turner, the project owner and general contractor, respectively, since the state labor law is not inconsistent with federal maritime law (*see Cammon v City of New York*, 95 NY2d 583, 589-590 [2000]; *Olsen*, 16 AD3d at 171). Moreover, notwithstanding the federal government's grant of part of Governor's Island to GIPEC, plaintiff's accident, which arose from repairs being made to a pier in a narrow waterway between Governor's Island and Brooklyn, was essentially local in character (*see Cammon*, 95 NY2d at 590; *Olsen*, 16 AD3d at 171).

Plaintiff is entitled to summary judgment on his Labor Law § 240 (1) claim as against GIPEC and Turner. Although his

injuries resulted directly from his fall on the float stage, at the same level where he had been working, he fell while struggling to avoid the elevation-related risk of falling into the water (*see Pesca v City of New York*, 298 AD2d 292 [1st Dept 2002]; *see also Dooley v Peerless Importers, Inc.*, 42 AD3d 199 [2d Dept 2007]). Defendants failed to refute plaintiff's expert professional engineer's affidavit setting forth numerous devices that could have provided additional protection against falling off the float stage. We also reject Turner's argument that it cannot be held liable pursuant to Labor Law § 240 (1) because it was merely a construction manager. Notwithstanding that its contract with GIPEC referred to Turner as a consultant, rather than a general contractor, Turner served as a general contractor for purposes of the statute since it was obligated to perform the larger facilities management project for GIPEC of which plaintiff's project was a part, hire all subcontractors and other personnel necessary to complete the project, and coordinate their work to ensure the timely completion of the project (*see Walls v Turner Constr. Co.*, 4 NY3d 861, 864 [2005]).

In light of the foregoing, we need not address plaintiff's common-law negligence and Labor Law §§ 200 and 241 (6) claims against GIPEC and Turner (*see Fanning v Rockefeller Univ.*, 106 AD3d 484 [1st Dept 2013]).

The Labor Law § 200 and common-law negligence claims are predicated, in part, on plaintiff's having fallen onto his back after his foot got caught in rebar that had been installed across a hole in the float stage that was uncovered. Plaintiff's expert opined that the hole should have been covered. Trevcon, which owned the float stage and supplied it to plaintiff's employer, failed to establish that it lacked notice of this condition or that the condition was not dangerous (*see Raffa v City of New York*, 100 AD3d 558 [1st Dept 2012]).

Trevcon established its entitlement to the dismissal of the Labor Law § 200 and common-law negligence claims predicated on other conditions, and plaintiff failed to raise triable issues of fact as to those conditions. There is no evidence that plaintiff's fall was caused by algae on the float stage. Nor can plaintiff hold Trevcon responsible for the effect of waves on the float stage or the absence of a "wave watcher." Waves were "an obvious condition known to plaintiff," a 54-year-old foreman who had been working on the site for several months (*see Keane v Chelsea Piers, L.P.*, 71 AD3d 593, 594 [1st Dept 2010]). To the extent plaintiff claims that his accident resulted from the means or methods of his work, Trevcon cannot be held liable because the record fails to show that it exercised the requisite supervi-

sory control (*see generally Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]). Although Trevcon supplied the float stage and a Trevcon employee had previously assisted plaintiff and another JES worker on the float stage, no Trevcon employees had been present on the site for about a week leading to the accident. Moreover, plaintiff testified that a JES supervisor was the person who instructed him on how to perform the work.

As the owner of the vessel, Trevcon is barred by the LHWCA from asserting its contractual indemnification claims against JES, plaintiff's employer. "[T]he employer [of a covered person injured due to 'the negligence of a vessel'] shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void" (33 USC § 905 [b]).

GIPEC and Turner are not entitled to contractual indemnification pursuant to the subcontract between Trevcon and JES, because a provision in a subcontract incorporating standard clauses from the main contract by reference does not include indemnification clauses (*see Waitkus v Metropolitan Hous. Partners*, 50 AD3d 260, 261 [1st Dept 2008]).

JES implicitly concedes that it failed to obtain insurance naming Trevcon, Turner, and NYCEDC as additional insureds. However, its obligation to procure insurance did not apply to GIPEC and the City of New York, since they were not named in that provision of the subcontract (*see id.*).

We have considered the parties' remaining arguments for affirmative relief and find them unavailing. Concur—Tom, J.P., Friedman, DeGrasse, Feinman and Gische, JJ.